The Kelly Legal Group, PLLC
Jeffrey S. Kelly, Attorney for Debtor
P.O. BOX 2125
Austin, Texas 78768
(512) 505-0053 Phone
(512) 505-0054 Fax

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| *In re:* **MARCUS SAENZ** | § | **Adversary No:** _____ |
| **DEBTOR AND PLAINTIFF** | § | **Case No. 10-12422 cag** |
| | § | **Chapter No. 7** |
| **vs.** | § | |
| | § | |
| **LEHMAN BROTHERS BANK, FSB;** | § | |
| | § | |
| **AURORA LOAN SERVICES, LLC** | § | **DEBTOR'S COMPLAINT TO** |
| **D/B/A AURORA LOAN SERVICES** | § | **EXTINGUISH PRIMARY** |
| | § | **MORTGAGE AND TO** |
| | § | **EXTINGUISH SECOND** |
| | § | **LIEN ON DEBTOR'S** |
| | § | **HOMESTEAD** |

## DEBTOR'S COMPLAINT TO EXTINGUISH PRIMARY MORTGAGE AND TO EXTINGUISH SECOND LIEN ON DEBTOR'S HOMESTEAD

COMES NOW, MARCUS SAENZ, Debtor and Plaintiff and files this Debtor's Complaint to Extinguish the Primary Mortgage and Extinguish Second Mortgage on Debtor's Homestead complaining of LEHMAN BROTHERS BANK, FSB (hereafter "LEHMAN"); and AURORA LOAN SERVICES, LLC; D/B/A AURORA LOAN SERVICES (hereafter "AURORA"); and aver on knowledge as to themselves and their own acts and on information and belief as to all other matters, as follows:

# I. JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this Court by 28 U.S.C. Sec. 157 and 28 U.S.C. 1331, 1337. The Court has authority to issue a judgment by virtue of 28 U.S.C. Sec. 2201. Plaintiff further pleads jurisdiction pursuant to the doctrine of pendent jurisdiction as to various related state law causes of action.  Pursuant to §523(c) [the ability of a debt to be discharged] this Adversary action has been filed within sixty (60) days of the creditors meeting which was scheduled for October 7, 2010.

# II. PARTIES

2.    The Plaintiffs, Marcus Saenz and Shannon Saenz, are natural persons residing at 7051 Gilbert Road, Manor, Texas  78653.

3.    Defendant Lehman is a Delaware corporation engaged in the business of mortgage lending with its principal office at 100 West Street, Suite 200 Wilmington, Delaware. Lehman effective April 27, 2009 is reorganized as Aurora Bank, FSB.

4.    Aurora Loan Services, LLC may be served at its principal office at 2617 College Park, Scottsbluff, NE 69361-2294.

5.    Defendant Lehman and Aurora Loan Services, LLC, MERS, and Faslo are, upon information and belief, participants in a real estate trust and a real estate mortgage investment conduit (REMIC), investing in certain asset-backed securities for which Plaintiff's mortgage was, in part, used to secure issuance of asset-backed securities.

## II.   FACTS

5.      Debtor/Plaintiff filed a Complaint in the Western District of the United States District Court of Texas, Austin Division on October 5, 2009 (cause number A09CA732 SS) seeking injunctive relief as against Defendant Lehman and/or Defendant Aurora.  Rather than litigate this matter the parties agreed to a Temporary Restraining Order on October 6, 2009. In that order the parties agreed that the property (as defined in **Exhibit A** (the "Property")) would not be sold at the Trustee sale.

6.      The Complaint was dismissed on April 6, 2010 by the Court for lack of service on all parties.

7.      Debtor commenced his Chapter 7 Bankruptcy on August 31, 2010 pursuant to a pro se filing.  The undersigned attorney entered an appearance on behalf of Debtor shortly thereafter.  To date the Bankruptcy and discharge has yet to be granted.

8.      Aurora Loan Services, LLC a non-interested party filed its Motion for Relief from Stay on September 10, 2010 despite the fact that Aurora Loan Services, LLC is not at all affiliated with Defendant Lehman Brother's nor its successor Aurora Bank, FSB in any manner evidenced by recordings in the Texas Travis county property records.  Debtor/ Plaintiff filed its response to the Motion on September 30, 2010 detailing the objections of standing and issues which exist with the Note and Deeds of Trust.  Debtor/ Plaintiff generally denies that Defendant Aurora Loan Services, LLC  is entitled to Relief from the Automatic Stay, and asserts that the relief sought is not appropriate in this case as was detailed in that response.  It is important to realize that Aurora Loan Services, FSB has yet to file a Proof of Claim in this matter but Aurora Loan Services, LLC a non-interested party has moved the Court for Relief

from Stay without proving the fact that money is owed and whether the debt is secured or unsecured.

9.     The non-interested party Aurora Loan Services, LLC asserts in its paragraph number 4 of its Motion For Relief From Stay that the approximate unpaid principal balance on the Note was $1,103,423.37. It must be known that the Note specifies that the principal balance is in fact $880,000.00 not $1,103,423.37. If the $1,103,423.37 includes interest then it should be reduced to the actual principal amount of $880,000.00. Nothing in the note allows for the addition of interest to the "Principal" balance. Next paragraph 5 of the non-interested Aurora Loan Services, LLC motion asserts that there is $241,725.68 in payment arrearage.     Aurora Loan Services, LLC   does not detail how much in actually principal reductions accrued in a fully amortized note during the term of the Note, thereby reducing the actual principal amount and how much is interest and other expenses.

10.     Debtor/Plaintiff was forced to file this action to compel Defendant Lehman and Aurora and the true holder in due course of Debtor's home mortgage notes to provide information including loan balances, arrearages and escrow balances and to negotiate and offer loan modifications to assist Debtor in bringing the notes current. Since the true holder in due course of the notes could not be established and the Movant would not discuss same with Debtor nor provide the information requested, Debtor was forced to proceed with this filing and the Adversary as well.

11.     It is a bit serendipitous that the filing of this action comes shortly after the Texas Attorney Generals filing of the halt to foreclosures in Texas due to loan/foreclosure documentation inconsistencies (see **Exhibit B**). The reason the Attorney General sites for its association with the 50 state coalition is the so called "robo-signing" of documents used to prove

certain facts surrounding foreclosures. It is the Debtor/Plaintiff's position that in fact this has occurred with the case at bar especially regarding the documentation (which has yet to be produced) surrounding the notice of foreclosures and the substitute trustee switch (see **Exhibit C** wherein the dates are inconsistent).

12.     The so called "robo-signing" is a result of the fact that the vast majority of notes and deeds of trust entered into between the years 2001 and 2007 in the United States were securitized[1] at some point. These loans are most of the time not being enforced by the true party in interest nor any party with standing to enforce the note in the form of stay relief, nor otherwise to sue or be sued on behalf of the true party in interest.

### III. ARGUMENT & AUTHORITIES

#### A.     Defendant Aurora lacks standing to enforce the note.

13.     Upon information and belief of Debtor/Plaintiff it is believed that despite the fact that Defendant Aurora lacks standing to enforce the note in this action (because it is not the true party in interest and/or does not have enough actual authority to qualify for standing, and/or does not have actual possession of the note, and has failed to join all appropriate parties.

---

[1] Securitization is a structured finance process that distributes risk by aggregating assets [mortgage notes] in a pool (often by selling assets to a special purpose entity), then issuing new securities backed by the assets and their cash flows. The securities are sold to investors who share the risk and reward from those assets.

Securitization is similar to a sale of a profitable business ("spinning off") into a separate entity. The previous owner trades its ownership of that unit, and all the profit and loss that might come in the future, for present cash. The buyers invest in the success and/or failure of the unit, and receive a premium (usually in the form of interest) for doing so. In most securitized investment structures, the investors' rights to receive cash flows are divided into "tranches": senior tranche investors lower their risk of default in return for lower interest payments, while junior tranche investors assume a higher risk in return for higher interest.

Securitization is designed to reduce the risk of bankruptcy and thereby obtain lower interest rates from potential lenders. A credit derivative is also sometimes used to change the credit quality of the underlying portfolio so that it will be acceptable to the final investors. As a portfolio risk backed by amortizing cash flows - and unlike general corporate debt - the credit quality of securitized debt is non-stationary due to changes in volatility that are time- and structure-dependent. If the transaction is properly structured and the pool performs as expected, the credit risk of all tranches of structured debt improves; if improperly structured, the affected tranches will experience dramatic credit deterioration and loss.

See for example, *In re Kang Jin Hwang* 396 B.R. 757 (Bankr.C.D.Cal.2008); *In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal., 2008)) Aurora is wrongfully attempting to enforce the note and its security interests despite its lack of standing.

   14. The right to enforce a note on the noteholder's behalf does not convert the noteholder's agent into a real party in interest. Id. at 396 B.R. at 767, quoting 6A Wright, Miller & Kane, *Federal Practice and Procedure*: *Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D.Wash., 2009). The holder of the note and not the servicer or the collecting agent, must be the moving party, and the party to whom relief is granted, must be so named in the pleadings. *Id; Kang Jin Hwang, supra; Vargas, supra*. Pursuant to FRCP 17(a) and 19(a), applicable via Rules 9014, 7017 and 7019, the true party in interest is the only party that can proceed in this action on behalf of the beneficiary of the note in question and their joinder is required. A federal court's jurisdiction is dependant upon the standing of the litigant, which includes both constitutional standing and prudential standing. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Kowalski v. Tesmer*, 543 U.S. 125, 128- 29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

> Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision.

Id; *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996); *Jacobson, supra* at p. 11. Constitutional standing is a requirement of Article III of the Constitution, is a threshold jurisdictional requirement, and cannot be waived. *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899-900 (9th Cir. 2000); *Jacobson, supra* at p. 12.

> A litigant must also have "prudential standing," which stems from rules of practice limiting the exercise of federal jurisdiction to further considerations such as orderly management of the judicial system. *Pershing Park*, 219 F.3d at 899-900; *In re Godon*, 275 B.R. 555, 564-565 (Bankr. E.D. Cal. 2002) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986).

*Id.* Prudential standing requires that a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9 Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest. Furthermore, FED. R. CIV. P. 19 requires mandatory joinder of every person with an interest in the note if not doing so could lead to inconsistent results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra* at 7.

> The exclusion of these unidentified parties is particularly important in this proceeding. It is highly unlikely that FHM has kept the promissory note: most likely, it sold the note into the market for mortgage securitization.· In consequence, it is quite unlikely that MERS is an authorized agent of the holder of the note here at issue. By adding these unidentified movants, MERS is trying to obtain relief from the automatic stay for the current note holders without disclosing to the court their existence, identities or the source of MERS's authority to act on their behalf. This is improper.

*In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008). And an attorney-in-fact that merely has agency relationship for the purpose of bringing suit is only a nominal party and not the true party in interest. 6A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1553 (2d ed. 1990). Foreclosure agents and servicers must prove they have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho 2007); *Kang Jin Hwang*, 396 B.R. at 767; Jacobson, supra at 12. <u>A nominee or agent must also show that it has actual authority from the true party in interest to act on its behalf and it cannot be assumed that it continues to have such authority even if granted it in the original deed of trust.</u> *See In re Mitchell*,

Memorandum Opinion, p.8, BK-S-07-16226-LBR, (Bky. D.NV. 2008). *Mitchell* was designated as the lead case for Motions to Lift Stay filed by MERS in 28 cases, listed by case number therein, in which an order for joint briefing was issued because the issues were substantially the same. Prior to oral argument in *Mitchell* MERS attempted to withdraw all but 4 of the motions. The mere fact that a party, such as Lehman Brothers Bank and MERS, is named as the lender and the beneficiary in a note and deed of trust is insufficient to allow a third party [Aurora Loan Servicing] to enforce the obligations of borrower and to pursue the rights of the original lender. For a party to be empowered to do so it must truly be the party or a beneficiary or at least join the true beneficiary in the action. Many documents including the Deed of Trust contain statements that admit that MERS or the servicer [Aurora Loan Servicing] is not the true beneficiary rather just a nominee. Further, there is no indication whatsoever that the Note has been sold or assigned to either Aurora nor MERS therefore it is unclear as to whom the Note Holder is, is it Lehman Brothers. The documents also contain contradictory statements stating that MERS is a beneficiary in one place and that it is only the nominee in another. Further, Aurora Loan Servicing is not listed anywhere in the Note or Deed of Trust, therefore there is no proof whatsoever of its rights or powers to pursue this motion or collect the debt [the only location that Aurora shows up at all in the loan documents is at the very top of the Deed of Trust as a party to mail a copy, this was stricken]. Interestingly though, in the notice of foreclosure sent out MERS is named as the "nominee for Aurora Loan Services, LLC, the Mortgagee or the Mortgage Servicer..." (see **Exhibit C** paragraph 4), and in the very last paragraph the notice specifies that "...Aurora Loan Servicers, as Mortgage Servicer, is representing the Mortgagee [notice that the true Mortgagee is not named]..." (in the letter to follow dated September 14, 2009 from Michael J. Schroeder the circular references even get worse in the first paragraph of his letter). "The

Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee." Realize that this servicing agreement has never been approved, signed or seen by Debtor/Plaintiff.   It is well established law that a person that holds a note is the one that may enforce the note, absent one of two exceptions not pertinent here.

>    **B.      There is no security for the Note because the Note and Deed of Trust have been split therefore making the alleged debt unsecured and dischargeable:**

15.      A deed of trust may be and is commonly used to secure performance of an obligation.  The "beneficiary" of the Deed of Trust is the person for whom benefit of the deed of trust is given which is the lender or mortgagee.  If the document [the Deed of Trust] does not allow for the conveyance of the benefits of the Mortgagee, then the conveyance is not legal and is void ab initio.    Lastly it is well established Texas law that a deed of trust is technically not enforceable without the note, as the note furnishes consideration for the deed of trust and vice versa.[2]

16.      Further, the documentation attached as exhibits hereto (the documentation similar to that which concerns the Texas Attorney General) proves that the Note and Deed of Trust are as between the Debtor/Plaintiff and Defendant Lehman Brothers Bank, FSB and no other parties.  Now Defendant Aurora Loan Services, LLC is attempting to claim that it is the successor in interest to Defendant Lehman's interest in the Note and Deed of Trust with no recorded transfer or presentation of the original note showing same.  Further, with diligent review of the instruments making up the actual foreclosure process  (see **Exhibit D** the Note and Deed of Trust and **Exhibit E** the appointment of Substitute Trustee the appointment of the Substitute Trustee wherein the dates are inconsistent) one can easily discern that the

---

[2] *In re Rangel*, 408 B.R. 650, 675 (Bankr. S.D. Tex. 2009) referencing foot note 14 "…The deed of trust is technically not enforceable without the note, as the note furnishes consideration for the deed of trust and vice versa."

documentation errors or issues which are currently concerning the Texas Attorney Generals office exist here. For example; (i) the appointment of the Substitute Trustee is executed and effective on July 14, 2008, but is then notarized before its signature on July 8, 2008, and MERS as a nominee for Aurora Loan Services, LLC is making the conveyance when the Deed of Trust is clear that the Lender Lehman is the only party who can convey such power. Further (ii) MERS wrongfully has inserted itself in as a "representative" (this is not a defined term nor a term of art memorializing any specific rights or responsibilities) for the conveyance of the powers of the trustee and the substitute trustee. Debtor/Plaintiff never authorized MERS to perform this act nor does the Deed of Trust convey the power for MERS to perform this act. The substitute trustee purporting to act on behalf of Defendant Aurora is not acting with actual authority because it is not acting on behalf of Lehman

      17.     An entity named as the beneficiary [MERS] on a deed of trust or who has been assigned or is the successor in interest [Aurora Loan Servicing] of the deed of trust may not enforce it if not the actual holder of the note.

> 'When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured.' RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

Further consideration as to whom may act for or on behalf of the "Lender" (in this case Lehman Brothers Bank) with regard to enforcement of the note or deed of trust is important especially if

as is suspected to be the case in the case at bar, the note has been securitized: *In re Mitchell*, supra at 8.

> If a note has been securitized into a pooling trust, the trustee may enforce the note. "If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 180 F.Supp.2d 465, 469-71 (S.D.N.Y.2001) (" LaSalle-Nomura "); accord, LaSalle *Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618, 631-34 (D.Md.2002) ("LaSalle-Lehman ").

*Kang Jin Hwang, supra* at 766. A securitized transaction creates multiple layers of complicity. Pealing back the layers of the onion one by one, the pooling and servicing agreement should be considered to ascertain how the trustee relationship was established. Since it has been established that the trustee of the securitized trust is actually the party in interest or the true "holder in due course" and the party which has the power to act, it is then true that the document that created the Trustee relationship to the pooling trust (which here we do not have as of yet but should be attained in discovery associated with the Adversary action) must be presented and reviewed so as to prove the relationship exists and that conveyance of the power to the substitute trustee is legitimate and that an actual conveyance occurred. It has been found in the past that often there is explicit language in the polling and servicing agreements that limits the powers of the Trustee and thus the Trustee does not have actual authority to act on behalf of the Trust, therefore if that is true in this case the substitute trustee is acting unlawfully.

18. Consider for a moment the complexity of a securitized pool and the disparity of access to the information and power which exists as between lenders, servicers and the like and the trustors or borrowers as compared with a traditional deed of trust arrangement, it is imperative this Court require a level of proof of the conveyance of power to act by the trustee for the pool similar to the level the Debtor is suggesting in this and the following paragraphs. If

one party (in this case the lenders, investors and servicers) is making conveyances which the borrower is not kept abreast of, vast differences in knowledge and information exist, this imbalance creates a large and insurmountable tipping of the scales of justice. Now if a transaction is securitized multiple additional layers of information and knowledge are imparted to the lenders and not the borrowers. This creates yet another argument for strict proof of the conveyance of the power to the trustee by the pool of investors and/or servicers. Further, in the context of securitization, it is unbelievable the number of complications which are created by the securitization system. For example with the confidential pooling and servicing agreements, the actual identity of the investors and noteholders is kept confidential from borrowers, this even though contrary to statute. In the current matter, Lehman Brothers Bank, FSB was the Mortgagee in the original Note and Deed of Trust (see attached **Exhibit D**). In a notice of foreclosure from Defendant Aurora's attorney (see attached **Exhibit C**) the Aurora admits that in fact the trustee named in the original Deed of Trust has been removed, and that either the Mortgagee or the "Mortgage Servicer" [a term which has not been defined or previously identified in the Note or Deed of Trust (recall that in paragraph 20 of the Deed of Trust "Loan Servicer" was defined)] has appointed another trustee. It is not clear from the deed of trust as to whom the "Mortgage Servicer" is or whether that party even has the power to appoint a trustee for foreclosure, and if the power exists is this power in addition to or restricted in any way from the pooling trust (see paragraph 20 of the Deed of Trust **Exhibit D**). Further, Mortgage Electronic Registration Systems, Inc ("MERS") as nominee of Aurora Loan Services, LLC which is the Mortgagee or the Mortgage Servicer, MERS is a beneficiary under this security Instrument (this is not in the Deed of Trust). The last paragraph of **Exhibit E** specifically states that in fact the "Mortgage Servicer is authorized to represent the Mortgagee by virtue of the servicing agreement with the

Mortgagee." If that is the case, then an original copy of the servicing agreement should be produced to affirm the power has been conveyed, especially since the Debtor/Plaintiff has never seen this document, yet another document the Defendant Aurora was not privy to nor was a party to. All said, it is clear that it is crucial the parties seeking to enforce notes be required to produce all the evidence necessary to prove their case, and that the rules of evidence be strictly enforced.

19.    Although the parties associated with this matter have not asserted that a power of attorney exists [which would actually add a bit of legitimacy to the transaction], if a power or attorney is presented to a Court that purports to grant authority from the trustee of a pooling trust to act on its behalf, the Court needs a properly offered copy of the pooling and servicing agreements to verify that the servicing agent may proceed on behalf of Movant or whether the true holder in due course of the note are the bond holders issued bonds from the securitized pools and that they have in fact conveyed the power. Further, if in fact a power of attorney is presented to this Court and it refers to pooling and servicing agreements, the Court needs a properly offered copy of the pooling and servicing agreements, to determine if the servicing agent may proceed on behalf of Movant. (*EMC Mortg. Corp. v.Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]). *HSBC Bank USA, N.A. v Valentin*, 1/30/2008, 18 Misc 3d 1123(A), 2008 NYSlipOp 50164(U), ¶ 3.[3] Understand that facts of these transactions are coming to light both through previous litigation as between Debtor/Plaintiff and Aurora (as specified previously)[4], and independent research as to the egregious behavior of mortgagee's a

---

[3] [Debtor cites to non Federal case law because this issue appears to be a issue of first impression] If a power of attorney is presented to this Court and it refers to pooling and servicing agreements, the Court needs a properly offered copy of the pooling and servicing agreements, to determine if servicing agent may proceed on behalf of plaintiff. (*EMC Mortg. Corp. v. Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]).

[4] Cause No. A09CA732 SS, In the United States District Court, Western District of Texas, Austin Division *Marcus Saenz and Shannon Saenz v. Lehman Brothers Bank, FSB, et al.*

copy of the pooling and servicing agreements and of all other documents, if separate, which set forth the terms of the powers of the Trustee from the pool and those to the substitute trustee if any are vital, because even the Trustee as named in the Deed of Trust may not have the powers to act on behalf of the pooling Trust, let alone the servicing agent for the Trustee of the pool. As well, if the Movant attempts to enter documents into evidence pursuant to a business records affidavit that has been signed by Aurora that attempts to establish that the Aurora is in fact the holder in due course of the note and deed of trust, it is urged by the Debtor/Plaintiff that the Court require the actual original or "blue-ink" copies of the note, deed of trust, the Servicing Agreement, and the pooling and securitization agreements be presented in open court to in fact prove that Aurora here has actual possession of the negotiable instrument and the deed of trust, not just a scanned copy from a pool of other notes as has been attempted to be passed off in previous federal court cases as between Aurora and Respondent.[5] It is Debtor/Plaintiff's assertion that evidence entered via Federal Rules of Evidence FRE 902(4) or (11) (including records which comply with FRE 803(6)) Certified public records and Certified domestic records respectively, are not sufficient because it does not prove that Aurora is actually in possession of each document presented rather it only shows that at one time the documents existed. Further the burden is not great on the Aurora part to do so; in fact the business and commerce code of all states require an original negotiable instrument be presented to prove that it has not been transferred and that it truly negotiable. Since that is the case Aurora should have ready access to same and easily be able to present the note, deed of trust and all other documents in open court.

20.     There have been many reported instances of foreclosures and loan documentation issues that have brought the veracity and authenticity of all loan documents in

---

[5] Cause No. A09CA732 SS, In the United States District Court, Western District of Texas, Austin Division *Marcus Saenz and Shannon Saenz v. Lehman Brothers Bank, FSB, et al.*

mortgage foreclosure cases into doubt. In most every case or instance it has been shown that there are generally large gaping holes in proof of the history of ownership and assignment of the notes associated with the loans, and in the proof of the chain of custody of each note from each holder in due course, that would be necessary to fairly prove the identity of the true party in interest. Further, once the true party in interest is proven next it is required to prove whether the power to foreclose or pursue the debt exists, most of the time these mistakes are so glaring it is disgusting. The reason Debtor/Plaintiff is requesting that certain evidence be required is not to get a free home by voiding the note, rather to just require that the lenders in fact adequately and fairly prove up their debt in compliance with the Rules of Evidence ( issues like competency of witness, personal knowledge, hearsay and authenticity, not to mention matters such as relevance of factual assertions contained in documents, and sufficiency of proof) which were put in place for all litigants, not just the big mortgage companies. Many of the cases cited herein strictly enforced the evidentiary rules simply because various facts in the cases placed the veracity of the documentary evidence in doubt. For example, *In re Mitchell*, supra at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008). At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority. *Jacobson* at 18. Is this case any different? One of the largest companies involved in the mortgage melt down was Lehman Brothers and MERS, each of which are involved with this transaction.

21.     As specified in the Response to Aurora's motion to lift stay, Debtor/Plaintiff urges the Court to realize that since that filing no additional information has

been remitted from Aurora's attorney regarding the gaping holes pointed out in the response. Therefore Debtor/Plaintiff again urges the court to consider *Nosek v Ameriquest et al* (Fed D Mass 2009)(Case 4:08-cv-40095-WGY) and the issues which are presented in the case. This case principally deals with large sanctions imposed by the bankruptcy court for misrepresentations made by loan servicers in their documentations and proofs of claims (a copy of the decision is attached hereto as **Exhibit F**). Although the Debtor/Plaintiff's counsel is not representing to the Court that similar representations are being made here, *Nosek* is introduced as an example of the issues facing other jurisdictions at present with cases similar to the one at bar.

      **C.**     **There exist additional Federal Claims which constitute a right of rescission and invalidation of the alleged security interest because of Defendants wrongful acts.**

      22.     Defendant Lehman and Aurora's actions constitute violations of the **Truth in Lending Act, 15 U.S.C. section 1601 (TILA)**, enforcement of Debtor/Plaintiff's rights to rescission regarding the consumer credit transaction and to void Defendant Lehman and Aurora's alleged security interest [Deed of Trust] in Debtor/Plaintiff's homestead Property, and to recover statutory damages, actual damages and reasonable fees and costs of this action by reason of Defendant's violations of TILA are appropriate.

      23.     Further, **15 U.S.C. section 1601** and its implementing regulations at **12 C.F.R. Part 226 (Regulation Z)**, as set forth more fully herein require that Defendants establish their rights to pursue foreclosure, to date no Defendant nor any other party known or unknown has established the right to pursue foreclosure of Plaintiff's home by virtue of a complete and total failure to establish ownership of the original "wet ink" promissory note and deed of trust,

including any chain of title leading to such ownership. Furthermore, no "holder in due course" of the alleged mortgage note can be established or verified as of the date of this complaint.

## PRAYER

24. **Defendant Aurora lacks standing to enforce the Note,** therefore Aurora is not a proper party to the underlying Bankruptcy and its claims if any should be denied and discharged.

25. **There is no security for the Note because the Note and Deed of Trust have been split therefore making the alleged debt unsecured and dischargeable**, therefore Debtor/Plaintiff hereby extinguishes the primary and secondary liens on Debtor/Plaintiffs homestead Property. The primary or first lien is in the amount of $880,000.00, and the secondary lien is in the amount of $165,000.00 each of which should be discharged as unsecured debt.

26. **There exist additional Federal Claims which constitute a right of rescission and invalidation of the alleged security interest because of Defendants wrongful acts.** Defendants have acted with unclean hands and should be stopped from enforcement of their alleged security interest.

WHEREFORE, PREMISES CONSIDERED, Debtor/Plaintiff asks that this Court require the true party in interest to appear as a party to this proceeding, and to present strict proof that it is true party in interest accompanied by original documents, or that the parties prove that they have full and sufficient authority to act on behalf of the true party in interest, or in the alternative

if Defendants cannot, discharge the first and second liens against Debtor/Plaintiff's homestead Property. Debtor/Plaintiff further requests such other and further relief as is just.

**EXHIBITS:**

| | |
|---|---|
| **Exhibit A:** | Legal Description of Property |
| **Exhibit B:** | Texas Attorney General Notice |
| **Exhibit C:** | Foreclosure Notice to Debtor/Plaintiff |
| **Exhibit D:** | Note and Deed of Trust |
| **Exhibit E:** | Notice of Substitute Trustee |
| **Exhibit F:** | Copy of *Nosek v Ameriquest et al* (Fed D Mass 2009)(Case 4:08-cv-40095-WGY) |

Respectfully Submitted,

THE KELLY LEGAL GROUP, P.L.L.C..
P.O. BOX 2125
Austin, Texas 78768
Telephone:          (512) 505-0053
Facsimile:          (512) 505-0054
Electronic mail:jkelly@kellylegalgroup.com

By: _____
JEFFREY S. KELLY
State Bar ID No. 24043746
*Attorney for Debtor/Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served upon all parties listed on the attached Service List on October 22, 2010.

_____
Jeffrey S. Kelly

# SERVICE LIST

Label Matrix for local noticing
0542-1
Case 10-12422-hcm
Western District of Texas
Austin
Wed Oct 13 16:31:22 CDT 2010

United States Trustee (SMG17)
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

ABC Supply
One ABC Parkway
Beloit, Wisconsin 53511-4466

Aurora Loan Services
2617 College Park
Scottsbluff, NE 69361-2294

Capital One
P.O. Box 34631
Seattle, WA 98124

Cash Master
10200 Sausalito Dr.
Austin, Texas 78759-6111

Co naco Check Cashing
Amir Batoei
P.O. Box 16477
Austin, Texas 78761-6477

Elegant Cabinets
328 Heartwood Dr. Ste 101
Austin, Texas 78745-2232

Ford Motor Credit
P.O. Box 152271
Irving, Texas 75015-2271

Granger Lumber Company
1515 S. Capital of Texas Hwy Ste 410
Austin Texas 78746-6575

Hanes Geo COmponets
6010 BaIcones Drive First Floor
Austin, Texas 78731-4270

Household Bank
P.O. Box 60102
City of Industry, CA 91716-0102

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Jackie McLendon
2700 Via Fortuna Dr.
Austin, Texas 78746-7911

Jackie McLendon
c/o Mark R. McLean
2700 Via Fortuna Drive, Ste 145
Austin, TX 78746-7008

Jeffrey S. Kelly
The Kelly Legal Group
PO Box 2125
Austin TX 78768-2125

Joel Mitchell
1505 Parkway
Austin, Texas 78703-4192

Marc A. Labate
100 Congress Ste 1600
Austin, Texas 78701-2974

Mark A. Labate
Robert Tyler
Bob Tyler Law PLLC
600 Congress Ave., Suite 1600
Austin TX 78701-2974

Mi Pueblito
10200 Sausalito Dr.
Austin, Texas 78759-6111

Morrison Supply, LLC
411 E. Vickery Blvd.
Fort Worth, Texas 76104-1385

Ryals Investments
909 Poydras Street 24th Floor
New Orleans, LA 70112-4000

Shefield Financial
6010 Golding Center
Winston, Salem, NC 27103-9815

Sunrise Mini Mart
915 W Oltorf St.
Austin, Texas 78704-5325

Terry Garnett Propane
400 Mercer Street
Dripping Springs, Texas 78620-3786

The Money Box
10200 Sausalito Dr.
Austin, Texas 78759-6111

The Money Store, LP
DBA The Money Box
c/o Charles A. Ruesink
10200 Sausalito Dr.
Autin Texas 78759-6111

Twin Creek Corp.
P.O. Box 302913
Austin, Texas 78703-0049

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

# SERVICE LIST

Velocity Credit Union
P.O. Box 1089
Austin, Texas 78767-1089

Warren Hayes
100 Congress Avenue, 18th Floor
Austin, Texas 78701-4042

Warren Hayes
c/o Nicholas S. Bressi
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, 18th Floor
Austin, TX 78701-4042

Jeffrey S. Kelly
The Kelly LegalGroup, PLLC
P.O. Box 2125
Austin, TX 78768-2125

Marcus Saenz
7051 Gilbert Road
Manor, TX 78653-5172

Randolph N Osherow
342 W Woodlawn, Suite 100
San Antonio, TX 78212-3314

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

IRS- Special Procedures
Branch Stop 5022 Aus
300 E. 8th Street
Austin, Texas 78701

End of Label Matrix
Mailable recipients    35
Bypassed recipients     0
Total                  35

# EXHIBIT A

FIELD NOTES DESCRIBING A 12 00 ACRE TRACT OF LAND OUT OF THE OLIVER BUCKMAN SURVEY NUMBER 40 IN TRAVIS COUNTY, TEXAS, BEING THE SAME TRACT OF LAND AS DESCRIBED IN DOCUMENT NUMBER 2005197781 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 12 00 ACRE TRACT OF LAND TO BE MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS

BEGINNING at an iron rod found at a point in the southeast right-of-way line of Gilbert Road at a point in the northeast line of that certain 60 00 acre tract of land, recorded in Document No 2003226181 of the Official Public Records of said county, for the west corner of said 12 00 acre tract of land and for the POINT OF BEGINNING hereof,

THENCE, with a portion of the aforementioned line the following two (2) courses,

1) North 32 degrees 17 minutes 40 seconds East a distance of 264 82 feet to an iron rod set at a point of curvature in said line,

2) with said curve, to the left whose radius is 1250 00 feet, an arc distance of 84 97 feet and a chord bearing and distance of North 30 degrees 15 minutes 40 seconds East 84 95 feet to an iron rod found at a point in said curve, for the north corner hereof,

THENCE, through said 60 00 acre tract, South 60 degrees 10 minutes 43 seconds East a distance of 1452 07 feet to an iron rod found at a point in the west line of that certain Robert Carey 44 125 acre tract of land, recorded in Volume 13297, Page 3131 of the Real Property Records of said county, for the east corner hereof,

THENCE, with the aforementioned line of said Carey tract, South 17 degrees 16 minutes 45 seconds West a distance of 357 95 feet to an iron rod found, for the south corner hereof,

THENCE, through said 60 00 acre tract, North 60 degrees 10 minutes 58 seconds West a distance of 1541 88 feet to the POINT OF BEGINNING and containing 12 00 acres of land, more or less